**NOT FOR PUBLICATION**                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAGEEB ABDELSAYED, | |
| | CIVIL ACTION NO. 07-5094 (JAP) |
| Plaintiff, | |
| v. | **OPINION** |
| ASSET PROTECTION GROUP, INC., a corporation, ERIC RASMUSSEN, individually, | |
| Defendants. | |

PISANO, District Judge.

Before the Court is Asset Protection Group ("APG") and Eric Rasmussen's

("Rasmussen") (collectively "Defendants"), Motion for Summary Judgment. For the reasons set

forth herein, the Court grants summary judgment in favor of Defendants.

## I.      BACKGROUND[1]

### A.      Factual History

Plaintiff, Nageeb Abdelsayed, is a native of Egypt who has lived in the United States

since 1999. He was employed by Defendant, APG, from 2005 until 2007, where he served as a

---

[1]The background is drawn from the undisputed facts set forth in Plaintiff's Rule 56.1 Statement of Material Facts, Defendants' Rule 56.1 Statement of Material Facts, as well as referenced exhibits.

security officer at the New York Container Terminal in Staten Island, New York.  He was terminated for cause, effective January 9, 2007, for "sleeping while on post while on duty, insubordination, failure to follow procedures, filing false reports [and] allegations, [and] failure to follow the chain of command."  Cert. Alan Krumholz ("Krumholz"), Exh. F.  Specifically, Plaintiff's supervisor, Rasmussen testified that he was notified by Gary Whyte, who was not an APG employee, that the guard patrolling the main gate was sleeping while on duty.  Cert. Gregory Kotchick ("Kotchick"), Exh. J p. 17:22-18:10, 21:15-23:23; Exh. L p. 56:18-61:3. Upon further investigation into the company records, it was determined that Plaintiff was the guard on duty at that time.  *Id.*

Additionally, on December 29, 2006, Rasmussen filed an incident report after Plaintiff failed to secure his gate properly thus allowing unauthorized persons to enter the container terminal.  Cert. Kotchick, Exh. C.  Plaintiff subsequently alerted the Port Authority police in violation of internal procedures.  *Id.*  Similarly, there were several incidents where Plaintiff reported complaints to the Waterfront Commission, instead of approaching his union delegate, which was in disregard of the chain of command as provided for in the collective bargaining agreement.  Cert. Kotchick, Exh. L p. 64: 3-23.  Finally, eleven of Plaintiff's co-workers submitted a petition to the union requesting Plaintiff's immediate removal because he created a hostile work environment and made false allegations.  Cert. Kotchick, Exh. G.

On January 10, 2007, Plaintiff appealed his termination with the New York Shipping Association Port Police and Guards Union ("NYSA-PPGU") Seniority Board, in accordance with his collective bargaining agreement, who upheld the termination.  Cert. Kotchick, Exh. E. Plaintiff, then sought review from the NYSA-PPGU Labor Relations Committee on February 1,

2007.  *Id.*; Cert. Kotchick, Exh. J.  The Committee held a hearing, at which Plaintiff testified, where they questioned him about the specific events leading to his termination.  After the testimony was presented, the Committee upheld the termination because Plaintiff "failed to address the reasons for his discharge."  Cert. Kotchick, Exh. J p. 39:1-23.

However, Plaintiff claims that he was unlawfully terminated because of his national origin and because he filed several grievances against his manager.  A summary of the events relating to these allegations is set forth below.

On August 12th, 2006, Plaintiff submitted his first of several incident reports.  Cert. Krumholz Exh. H, Tab 2.  He described an incident that occurred between himself and Francesca Coleman ("Coleman"), a co-worker at the New York Container Terminal.  *Id.*  According to his report, Coleman yelled and cursed at him after he allegedly interfered with her job responsibilities.  *Id.*  Several weeks later, Plaintiff filed a grievance letter against Rasmussen in which he complained of unfair treatment.  *Id.* Exh. I.  Plaintiff described an incident where Coleman allegedly sexually harassed him because she touched him inappropriately while wearing pants that "shown [sic] her body in [a] disrespectful way."  *Id.*  He claimed that Rasmussen encouraged a relationship between him and Coleman; and permitted a sexual conversation to occur between Coleman and other co-workers in his presence.  *Id.*  These incidents made Plaintiff increasingly uncomfortable in light of the alleged sexual harassment incident.  *Id.*  Plaintiff testified under oath, that after he reported the incident, Raymond Gorski ("Gorski"), a union representative, addressed the issue with Plaintiff less than one week after the complaint was filed.  Cert. Kotchick, Exh. K, p. 59:12-60:2.  He further admitted that thereafter he and Coleman were assigned to different gates during different shifts.  *Id.*, p. 45:8-48:3.

Plaintiff filed a second grievance against Rasmussen for continuing to contribute to a hostile work environment. *Id.*; Exh. H.  Specifically, Plaintiff complained that Rasmussen staffed him on two simultaneous assignments and when Plaintiff asked for help, Rasmussen told him to use his common sense. *Id.*  Plaintiff also claims that Rasmussen forced him to take the day off when Plaintiff was scheduled to meet with the union regarding the first grievance he filed against Rasmussen. *Id.*  Additionally, Plaintiff complained that Rasmussen would not tell him that Gary Whyte was the individual who reported him for sleeping while on duty. *Id.*  Finally, after Rasmussen heard about the incident where unauthorized people entered the facility due to Plaintiff's failure to properly secure the gate, Plaintiff claims Rasmussen yelled at him saying, "Nageeb; You are very professional in digging your own grave!" *Id.*

On October 19th, 2006, the NYSA-PPGU Seniority Board held a hearing concerning the sexual harassment and hostile work environment allegations.  Cert. Kotchick, Exh. E p. 2.  The Board reviewed the findings of an investigator, Daniel O'Connor ("O'Connor"), who was hired to investigate the allegations. *Id.*  During his investigation, O'Connor interviewed Plaintiff, Coleman, Rasmussen, along with several other co-workers at APG, and found the allegations to be unsubstantiated. *Id.* at 2, 5.  Furthermore, at the meeting, Plaintiff advised the Board "that the problems [with Coleman] were completely over" and "he ha[d] no more problems with Mr. Eric." *Id.* at 5.  Accordingly, the Board found "that there appeared to be no justification for these allegations, that they were unsubstantiated and that there were no witnesses." *Id.* at 4.

Finally, Plaintiff claims that Rasmussen's knowledge that Plaintiff served in the Egyptian army coupled with a statement that he is afraid of Plaintiff, is evidence of discrimination based on Plaintiff's national origin.  Cert. Kotchick, Exh. L, p. 52:23-53:23.

-4-

## B.      Procedural History

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

Commission on March 23, 2007, who issued a Notice of Right to Sue.  Cert. Krumholz, Exh. D,

Tab 1-2; Exh. E.  On October 22, 2007, Plaintiff filed a complaint *pro se* against APG and the

NYSA-PPGU Seniority Board alleging violations of Title VII ("Title VII").  Cert. Krumholz,

Exh. C, Tab 1.  Plaintiff subsequently retained counsel and filed an amended complaint against

APG and Rasmussen on March 4, 2008, claiming violations of both Title VII and the New Jersey

Law Against Discrimination ("LAD").  On January 23, 2009, Defendants moved for Summary

Judgment.

## II.    DISCUSSION

### A.      Standard of Review

A court shall grant summary judgment under Federal Rule of Civil Procedure 56(c) "if

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are critical or "material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at

324.  In so presenting, the non-moving party must offer specific facts that establish a genuine

issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

-5-

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

### B.     Discriminatory Discharge

Courts apply the burden-shifting framework, articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to racial discrimination claims under Title VII and the LAD. *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005); *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 211 (1999). Accordingly, Plaintiff must first establish a prima facie case through demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position from which he was discharged; and (3) others not in the protected class were treated more favorably. *McDonnell*, 411 U.S. at 802. If plaintiff is able to set forth a prima facie case, the burden then shifts to the defendant to "to articulate some legitimate, nondiscriminatory reason for the employee's" termination. *Id.*; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If the defendant is successful in carrying his burden, the plaintiff then has the opportunity to prove, by a preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253 (citing *McDonnell*, 411 U.S. at 804). However, "Plaintiff cannot simply cannot simply show that the employer's decision was 'wrong or mistaken' but instead

-6-

must show that it was motivated by discriminatory animus." *Ditzel v. Univ. of Med. & Dentistry*, 962 F. Supp. 595, 604 (3d Cir. 1997) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).  As such, it is not the Courts' role to delve into personnel decisions and evaluate whether the employer's decision to terminate the employee was justified.  *Ditzel*, 962 F. Supp. at 604 (citing  *Peper v. Princeton Univ. Board of Trustees*, 77 N.J. 55, 87 (1978)).

In the case at bar, the main issue in the discriminatory discharge claim is whether the Defendants have a legitimate, nondiscriminatory reason for Plaintiff's termination.  The Court finds that the undisputed facts reveal a nondiscriminatory reason for Plaintiff's discharge. Plaintiff was terminated for "sleeping while on post while on duty, insubordination, failure to follow procedures, filing false reports [and] allegations, [and] failure to follow the chain of command."  Cert. Krumholz, Exh. F.  On January 10, 2007, the NYSA-PPGU, upheld his termination on those grounds, which was subsequently affirmed by the NYSA-PPGU Labor Relations Committee.   Cert. Kotchick, Exhs. E; J p. 39:1-23.  Although the Plaintiff may disagree with APG's decision to terminate his employment, the record is devoid of any facts suggesting that the reasons for Plaintiff's termination were a pretext for discrimination.

## C.     Hostile Work Environment

The standards developed for measuring workplace hostility claims "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Accordingly, a  plaintiff claiming discrimination due to a hostile work environment must establish "by the totality of circumstances, the existence of a hostile or abusive environment which is the severe enough to affect the psychological stability of an . . . employee." *Aman v. Cort Furniture*, 85 F.3d 1074, 1081 (3d Cir. 1996) (citing *Andrews*

*v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)).  Specifically, a plaintiff must demonstrate: "(1) that he . . . suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability."  *Id.*

In the instant case, Plaintiff claims that he was subjected to a hostile work environment because he was sexually harassed and discriminated against due to his national origin.  The Court turns first to the sexual harassment allegation.  Plaintiff alleges that he was sexually harassed by Coleman because she yelled and cursed at him and touched him inappropriately while wearing pants that "shown [sic] her body in [a] disrespectful way."  Cert. Krumholz, Exh. I.  However, the record reflects that this conduct was not pervasive or regular.  In fact, Plaintiff himself admitted that within a week of filing the grievance, a union representative was sent to discuss the matter with him.  Cert. Kotchick, Exh. K, p. 59:12-60:2.  Furthermore, he testified that he and Coleman were assigned to different shifts at separate gates.  *Id.*, p. 45:8-48:3.  The record is similarly devoid of evidence relating to Plaintiff's claim of hostile work environment due to his national origin.  As evidence of this discrimination, Plaintiff points to a statement made by Rasmussen where he indicated that he was aware that Plaintiff served in the Egyptian army and that he was afraid of Plaintiff.  Cert. Kotchick, Exh. L, p. 52:23-53:23.  Although Rasmussen may have been afraid of him, Plaintiff does not identify any undisputed facts suggesting even an instance of discrimination based on this fear.

### D.    Retaliatory Discharge

A plaintiff must satisfy the following four factors to establish a prima facie retaliatory

discharge claim under Title VII and LAD: "(1) that []he engaged in protected activity; (2) that []he was discharged subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the discharge." *Aman*, 85 F.3d at 1085.  Filing a workplace grievance or complaint is considered protected activity. *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001).  If a plaintiff is successful in establishing a prima facie case, the burden then "shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse action." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 (3d Cir. 1996).  If the employer sets forth a legitimate, non-retaliatory reason for the adverse action, the plaintiff then has the opportunity to prove that "the articulated reason is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer." *Id.*; *Jamison v. Rockaway Tp. Bd. of Educ.*, 577 A.2d 177, 182 (N.J. Super. Ct. App. Div. 1990).  Finally, if the plaintiff is able to prove that the employer had an "improper retaliatory intent," the employer must prove "that the adverse action would have been taken regardless of retaliatory intent." *Delli Santi*, 88 F.3d at 199.

Here, the Court finds that Plaintiff's prima facie case is flawed because he has failed to demonstrate a causal link between his protected activity, filing several grievances with his union, and his discharge.  Plaintiff was terminated because he inadequately performed his duties at APG.  During the hearing with the NYSA-PPGU Labor Relations Committee, the Committee upheld Plaintiff's termination because he did not properly respond to the reasons for his discharge.  Cert. Kotchick, Exh. J p. 39:1-23.  Furthermore, Plaintiff himself advised the NYSA-PPGU Seniority Board that he had no further problems with Rasmussen as of October 19th, 2006.  *Id.*, Exh. E p. 4.  As such, the Court finds that there is no issue of material fact suggesting that his

-9-

termination was premised upon anything other than his inadequate work performance.

The Court notes that even if there were a causal link between Plaintiff's protected activity and his discharge, Plaintiff's retaliatory discharge claim would still not survive summary judgment. As previously discussed, there is no factual dispute over whether Defendants' articulated reason was a pretext for the retaliation.

## III.  CONCLUSION

For the reasons expressed above, the Court grants Defendants' motion for summary judgment.  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: March 31st, 2009